UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

CASE NO.:  07-22328-CIV-DIMITROULEAS/ROSENBAUM

SUZANNE JONES, LES and LAUREN ROSEN and
DEAN and LISA SACERDOTE,

      Plaintiffs,

vs.

JELD-WEN, INC.,

      Defendant.
_____/

JELD-WEN, INC., individually and as assignee
of the claims of Cardinal IG Company,

Third-Party Plaintiff,

vs.

NEBULA GLASS INTERNATIONAL, INC.,
d/b/a GLASSLAM and N.G.I., INC., and
REICHHOLD, INC.

Third-Party Defendants
_____/

## **ORDER DENYING MOTION FOR CLASS CERTIFICATION**

THIS CAUSE is before the Court upon Plaintiffs' Motion for Class Certification, filed

herein on March 3, 2008. [DE-112].  The Court has carefully considered the Motion, Defendant

Jeld-Wen's April 7, 2008 Notice of No Position [DE-145], Third-Party Defendant Reichhold's

April 2, 2008 Response [DE-138], Third-Party Defendant Glasslam's April 2, 2008 Response

[DE-140], Plaintiffs' April 18, 2008 Reply [DE-153], Reichhold's May 2, 2008 Sur-Reply

[DE-161], and is otherwise fully advised in the premises.

# I. <u>BACKGROUND</u>

**A. Factual History**

The instant action stems from a lengthy path of litigation revolving around glass products and resin.  The Court will provide the extensive history in order to provide proper context for its ruling on the Motion for Class Certification.

Plaintiffs are Florida residents who purchased "hurricane proof" impact-resistant windows and glass doors from Defendant Jeld-Wen.  Defendant Jeld-Wen Inc. ("Jeld-Wen") is an Oregon corporation that is in the business of manufacturing and selling glass products, including laminated glass.  From 1997 to 2003, Jeld-Wen's Pozzi and Caradco divisions manufactured wood windows and doors incorporating laminated, hurricane-resistant glass products, which were made using the "Safety-Plus" system developed and licensed by Third-Party Defendant Nebula Glass International, Inc. d/b/a Glasslam N.G.I., Inc. ("Glasslam").

Third-Party Defendant Glasslam is a Florida corporation that supplies licensee and non-licensee customers with raw materials and instructions to produce various laminated glass products.  Laminated glass is generally made by sandwiching resin and a thin film between two pieces of glass.  Glasslam licenses its patented process, called "Safety Plus I", for making impact-resistant laminated glass.

In 1996, Glasslam commenced a business relationship with Third-Party Defendant Reichhold, Inc. ("Reichhold").  Reichhold is a Delaware corporation, with manufacturing plants in Florida, that produces resin for various applications.  During the course of their relationship, Reichhold supplied Glasslam with drums of resin through a distributor, Polygard.  Glasslam used some of the resin but sold the remainder to its customers.  Reichhold supplied Glasslam with

2

three different resins in the following order (though sales of all three resins overlapped): (1) Resin 32038; (2) Resin 32029; and (3) Resin 32038-45.  Glasslam discovered in October 2001 that Reichhold had been making its resin without Tinuvin 328, an ultra-violet light absorber Glasslam had required.  The parties' business relationship terminated in approximately December 2001, and no other resin was sold by Reichhold to Glasslam after that time.  Glasslam continued to sell Reichhold resin to its customers through February 2002, though it added Tinuvin to all Reichhold resin sold to third parties.

One of the customers to whom Glasslam sold Reichhold resin was Defendant Jeld-Wen. In June 1997, Glasslam and Jeld-Wen had entered into an agreement wherein Glasslam licensed its Safety-Plus system to Jeld-Wen and agreed to sell Safety-Plus products for the manufacturing of laminated impact-resistant glass at Jeld-Wen's Pozzi facility.  In August 1998, Cardinal IG Company ("Cardinal"), a Minnesota corporation, also entered into a contract with Glasslam for the licensing rights to make, use, and sell the resin and Safety-Plus products.  Jeld-Wen and Cardinal then purchased resins from Glasslam under the terms of their Agreements.  Jeld-Wen incorporated the resins in the manufacture of impact-resistant glass for use in hurricane-prone regions.  Cardinal manufactured, and sold to Jeld-Wen, Safety Plus glass containing the resin. When prepared properly, the impact resistant glass was meant to perform for at least ten years. However, Jeld-Wen began receiving complaints from customers as to failures in the laminated glass–the glass was delaminating and discoloring.  Glasslam has since admitted that the resin is defective, due to the absence of Tinuvin and because the resin was "undercooked."

**B. Procedural History**

   *1. Glasslam I*

On April 5, 2002, Glasslam filed a complaint against Reichhold in the Circuit Court for

the Seventeenth Judicial Circuit in and for Broward County, Florida, which Reichhold removed

to federal court on May 22, 2002.  Nebula Glass Int'l, Inc. v. Reichhold, Inc., 02-60703-CIV-

DIMITROULEAS (S.D. Fla. filed May 22, 2002) (hereinafter "Glasslam I").  On May 23, 2002,

Glasslam filed an Amended Complaint in Glasslam I asserting claims for: (I) Breach of Contract;

(II) Breach of Express Warranty; (III) Breach of Implied Warranty; (IV) Breach of Implied

Warranty of Fitness for a Particular Purpose; and (V) Fraud.  Primarily, Glasslam's Amended

Complaint alleged that Glasslam required Reichhold to insert an ultraviolet light blocker called

"Tinuvin 328" in the resin supplied by Reichhold.  Glasslam contended that the absence, or

incorrect percentage, of Tinuvin causes various problems including the decreased efficiency of

hurricane resistant laminated glass.  Glasslam contended that as a proximate result of Reichhold

not supplying resin in accordance with Glasslam's specifications, Glasslam suffered known

damages to several projects, a loss of business, and potential exposure for faulty glass.

On December 3, 2002, this Court granted Reichhold's motion to dismiss Counts IV and

V of the Amended Complaint in Glasslam I.  The Court dismissed the fraud count based on

Florida's economic loss rule and the implied warranty for a particular purpose count based on

insufficient allegations of Glasslam's reliance on Reichhold's skill and judgment.  See Glasslam

I, 02-60703-CIV (S.D. Fla. Dec. 3, 2002) [DE-14].  A jury trial on Plaintiff's remaining claims

for breach of contract, breach of express warranty, and breach of implied warranty was held

before this Court in May 2004.  The jury found in favor of Plaintiff on all three counts and

awarded damages for each of the three Reichhold resins at issue for out-of-pocket expenses, unpaid customers claims for future replacement of laminated glass, and lost profits.  The Court entered final judgment for Plaintiff in the amount of $22,500,000.00.  Reichhold appealed the final judgment on the issue of damages only.  On June 30, 2006, the Eleventh Circuit Court of Appeals affirmed the judgment.  See Nebula Glass Int'l Inc. v. Reichhold, Inc., 454 F.3d 1203 (11th Cir. 2006).

### 2. *Glasslam II*

Glasslam filed another Complaint against Reichhold on April 29, 2005, asserting claims for: (I) Breach of Contract; (II) Breach of Express Warranty; (III) Breach of Implied Warranty; (IV) Fraud; (V) Negligent Misrepresentation; and (VI) Fraud in the Inducement, alleging facts identical to those in Glasslam I.  See Nebula Glass Int'l, Inc. v. Reichhold, Inc., Case No. 05-60704-CIV-DIMITROULEAS (S.D. Fla. filed Apr. 29, 2005) (hereinafter "Glasslam II").  In that case, Glasslam sought damages in addition to those awarded in Glasslam I for claims that were not yet ripe at the time that Glasslam I was filed.  In Glasslam II, Glasslam argued that Reichhold was collaterally estopped from relitigating Counts I, II, and III based on the final judgment in Glasslam I.  Reichhold argued that it was not estopped from litigating those counts based on changed factual circumstances.  The Court agreed, in part, and held that the parties could not relitigate the breach elements of Glasslam's claims but could litigate causation and themes of bad installation and bad fabrication based on changed factual circumstances.  See Glasslam II, Case No. 05-60704-CIV (S.D. Fla. Oct. 30, 2006) [DE-108].   Prior to trial in Glasslam II, the parties reached a settlement agreement in that action.

### 3. *Jeld-Wen I*

On May 26, 2005, Jeld-Wen filed a Complaint against Defendants Glasslam and Cardinal

IG Company ("Cardinal").  Jeld-Wen filed its Third Amended Complaint on December 1, 2006.

[DE-117], in which it asserted claims for: (I) Breach of Contract; (II) Breach of Express

Warranty; (III) Breach of Implied Warranty of Merchantability; (IV) Breach of Implied Warranty

of Fitness for a Particular Purpose; (V) Unjust Enrichment; (VI) Fraud; and (VII) Claim of

Indemnity against Glasslam.  See Jeld-Wen, Inc. v. Nebula Glass International, Inc., Case No.

05-60860-CIV-DIMITROULEAS (S.D. Fla. filed May 26, 2005) (hereinafter "Jeld-Wen I").

Jeld-Wen voluntarily dismissed Cardinal from the action on January 30, 2007. [DE-165].

On December 9, 2005, Glasslam filed a Third-Party Complaint in Jeld-Wen I against

Third-Party Defendant Reichhold.  In the Third-Party Complaint (Amended by Interlineation),

Glasslam alleged claims for the following: (I) Breach of Contract; (II) Breach of Express

Warranty; (III) Breach of Implied Warranty; (IV) Fraud; (V) Negligent Misrepresentation; (VI)

Fraud in the Inducement; and (VII) Indemnity; and (VIII) Contribution[1].  In the Third-Party

Complaint, Glasslam alleged facts almost identical to those alleged in Glasslam II.

In ruling on the parties' motions for partial summary judgment, this Court ruled that

collateral estoppel precluded the re-litigation as to whether the resin was defective.  Causation

again remained an issue however, in terms of actual damages for the windows at issue.  See Jeld-

Wen I, Case No. 05-60860-CIV (S.D. Fla. May 15, 2007) [DE-305].   A trial was conducted in

June 2007, however, this Court has since granted Jeld-Wen's Motion for a New Trial pursuant to

---

[1]Glasslam's Third-Party Complaint contained two counts numbered "Count VI."  The Court construed the duplicate Count VI, Glasslam's claim for Indemnity, to be Count VII of the Third-Party Complaint and Count VII, a claim for Contribution, to be Count VIII.

Federal Rule of Civil Procedure 60(b)(3). [DE-489; DE-508].  Therefore, the homes at issue in
Jeld-Wen I will be retried, in a consolidated trial with claims brought in the subsequent case,
discussed below.

### 4. *Jeld-Wen II*

On September 5, 2007, Jeld-Wen brought an action seeking damages for the claims that
were not adjudicated in Jeld-Wen I and for claims assigned by Cardinal.  See Jeld-Wen, Inc. v.
Nebula Glass International, Inc., et al., Case No. 07-22326-CIV-DIMITROULEAS (S.D. Fla.
filed Sept. 5, 2007) (hereinafter "Jeld-Wen II").  In its Second Amended Complaint filed on
January 28, 2008 [DE-112], Jeld-Wen brought claims against Glasslam for (I) Breach of
Contract; (II) Breach of Implied Warranty of Merchantability; (III) Breach of Implied Warranty
of Fitness for a Particular Purpose; (IV) Unjust Enrichment; (VIII) Constructive Trust; (IX)
Equitable Lien; (XIII) Implied Contractual Indemnity; and (XIV) Breach of Covenant of Good
Faith and Fair Dealing.  Jeld-Wen also brought claims against Glasslam and Reichhold for (V)
Innocent Misrepresentation; (VI) Negligent Misrepresentation and Non-Disclosure; (VII) Fraud;
(X) Equitable Subrogation; (XI) Equitable Assignment; and (XII) Equitable Indemnity.  In
addition, Jeld-Wen brought claims against Stephen Howes, the President and owner of Glasslam,
for: (XV) Alter Ego/Piercing the Corporate Veil and (XVI) Unjust Enrichment, as well as (XX)
Restitution of Royalties against Glasslam and Howes.  Finally, Jeld-Wen brought claims for
(XVII) Declaratory Judgment as to the Invalidity of U.S. Patent No. 5,778,629; (XVIII)
Declaratory Judgment as to the Invalidity of U.S. Patent No. 5,937,611; and (XIX)  Declaratory

Judgment as to the Invalidity of U.S. Patent No. 6,101,783.[2]

Glasslam filed a cross-claim against Reichhold on March 7, 2008, bringing claims for breach of contract, breach of express warranty, breach of implied warranty, indemnification and contribution.

On May 1, 2008, this Court granted Reichhold's Motion to Dismiss in part. Case No. 07-22326-CIV (S.D. Fla. May 1, 2008) [DE-371]. Counts V (Innocent Misrepresentation); X (Equitable Subrogation); XI (Equitable Assignment); and XII (Equitable Indemnity) of Jeld-Wen's Second Amended Complaint were dismissed against Reichhold for failure to state a claim. Only Jeld-Wen's claims for negligent misrepresentation and fraud remain as to Defendant Reichhold. In this Court's Order of June 5, 2008 on the parties' Motions for Summary Judgment, Counts IV, V, VI, VII, VIII, IX, XI, XIII, and XIV against Glasslam were dismissed, leaving only Counts I-III, X and XII. Case No. 07-22326-CIV (S.D. Fla. June 5, 2008) [DE-526]. In addition, this Court yet again held that liability had been established, but that the issues of actual causation of damages remained to be proven at trial, on both Jeld-Wen and Glasslam's breach of contract and warranty claims. The Court also ruled that Glasslam and Reichhold's defenses based on Jeld-Wen's customer warranties were barred. The Court noted that the homeowners were not joined in the action to present grounds for invalidating the warranties, that Jeld-Wen itself had raised the possible grounds of invalidity, and that judicial estoppel precluded Glasslam from asserting warranties as a defense. As stated in the Order, this ruling also encompassed arguments as to second homeowners and the limited remedies afforded by the

---

[2]Glasslam and Howes filed a Motion to Sever [DE-236], which was granted. Calendar Call for a trial on Counts XV-XX is scheduled for August 22, 2008. [DE-443].

warranties–thus, payments above the terms of the warranties, such as for installation and labor, are not available as an affirmative defense by Reichhold and Glasslam in that action to decrease recovery.   Particularly relevant to the instant action, the Court further indicated that based on this ruling, Jeld-Wen would be estopped from asserting its customer warranties as a defense in related actions brought by customers.

### 5.  *Jones v. Jeld-Wen*

Plaintiffs, customers of Jeld-Wen, filed the instant action on August 14, 2007 in the Circuit Court of Miami-Dade County, which Defendant Jeld-Wen removed on September 5, 2007. [DE-1].  Plaintiffs filed an Amended Class Action Complaint ("Complaint") on January 8, 2008. [DE-83].  In the Complaint, Plaintiffs indicate their homes contain Jeld-Wen impact resistant windows and glass doors, manufactured with resin supplied by Glasslam and glass products supplied by Cardinal.[3]  The named Plaintiffs are Suzanne Jones, a resident of Miami-Dade County, Les and Lauren Rosen, residents of Palm Beach County, and Dean and Lisa Sacerdote, residents of Martin County.

According to the Complaint, Jeld-Wen knew or should have known that the windows and glass doors were not suitable for residential or commercial use and that the windows were subject to fail due to defective resin and/or a uniform design defect.  The Complaint further alleges that Jeld-Wen, upon learning of the defect, should have disclosed this to its customers and fully compensated them for all damages arising from the defect.  The Complaint further indicates that though Jeld-Wen has offered to provide new windows and doors to some customers, it is holding

---

[3]The Complaint had also named Cardinal and Glasslam as Defendants, but they were voluntarily dismissed on November 9, 2007. [DE-57; DE-58].

customers responsible for the installation costs.  For example, the Sacerdote's windows were replaced by Jeld-Wen, but they had to pay the labor and installation charges.  The Complaint brings claims for (I) Breach of Implied Warranty of Merchantability; (II) Breach of Implied Warrranty of Fitness for a Particular Purpose; (III) Violation of Florida Deceptive and Unfair Trade Practices Act; and (IV) Unjust Enrichment.  This Court has jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332.

On January 18, 2008, Jeld-Wen, on its own behalf and on behalf of the rights assigned by Cardinal, filed a Third-Party Complaint against Glasslam and Reichhold.  Jeld-Wen brings claims for (I) Breach of Contract against Glasslam; (II) Breach of Implied Warranty of Merchantability against Glasslam; (III) Breach of Implied Warranty of Fitness for a Particular Purpose against Glasslam; (IV) Indemnity against Glasslam and (V) against Reichhold; (VI) Contribution against Glasslam and (VII) against Reichhold; (VIII) Equitable Indemnity against Glasslam and (IX) against Reichhold; and (X) Implied Contractual Indemnity against Glasslam.

## II.  DISCUSSION

Plaintiffs seek class certification pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3).  The class is defined in two subclasses:

Subclass A: consisting of all persons and entities in the State of Florida who purchased impact-resistant Pozzi or Caradco windows and/or glass doors and have not been offered replacement windows and/or glass doors by Defendant.

Subclass B: All persons and entities in the State of Florida who purchased impact-resistant Pozzi or Caradco windows and/or glass doors and were offered replacement windows and/or glass doors by Defendant but had to pay labor and/or installation charges.

**A.  Initial Issues**

**1.  Objections to the Class**

First, the Court notes that Defendant Jeld-Wen filed a Notice of No Position on Plaintiffs'

Motion for Class Certification.  However, third-party Defendants Reichhold and Glasslam filed

Responses in Opposition to the Motion.  Plaintiff argues that they are third-party defendants from

whom they do not seek damages and thus they lack standing to oppose the Motion.   Plaintiffs

also argue that as they have not yet filed an answer, they are not yet adverse and cannot assert

defenses against the Plaintiffs under Federal Rule of Civil Procedure 14.  Plaintiffs assert that

though they still bear the burden to satisfy the requisite class criteria, substantial weight should

be afforded to Jeld-Wen's failure to oppose the motion.  However, the Court does not find it

significant that Jeld-Wen does not oppose the instant motion.  Though it may be easier for Jeld-

Wen to defend in one class action, which may have led to its non-objection, this does not

overcome the individualized issues pertaining to its customer's claims.  Regardless of the Third-

Party Defendants' arguments, Plaintiffs have failed to satisfy their burden for class certification,

as discussed below**.**

**2.  Appropriate Class Definition**

As an initial matter, the Court must address the proposed class definition.  See e.g.,

O'Neill v. The Home Depot U.S.A., Inc., 243 F.R.D. 469, 477 (S.D. Fla. 2006); Perez v.

Metabolife Int'l., Inc., 218 F.R.D. 262, 269 (S.D. Fla. 2003); Rink v. Cheminova, Inc., 203

F.R.D. 648, 660 (M.D. Fla. 2001).  Third-Party Defendant Reichhold argues that determining the

membership in the class itself involves intricate individual issues–such as whether the

homeowner has windows and doors with Reichhold resin, whether they were an original

11

homeowner under the warranty claims, whether they had voluntarily contracted to pay labor and/or installation charges to be in Subclass B, and whether the glass failed due to the defective resin.  Plaintiffs argue that the Court could simply appoint a special master to identify class members by overseeing a claims process.  Jeld-Wen's records could also be used to ascertain whether the product contains the defective Reichhold resin.

Here, the class definition may demonstrate potential problems with certifying the instant action as a class action.  See O'Neill, 243 F.R.D. at 478.  Though the warranty issues are no longer present, ascertaining whether the resin in question was present in a homeowner's products would need to be determined for each potential class member.  However, as Plaintiffs point out, records may address these problems.  As the Court discusses below, however, there are additional issues that further demonstrate that the instant action is not suitable for a class action.

## B.  Rule 23(a)

Parties seeking class action certification must satisfy the four requirements of Federal Rule of Civil Procedure 23(a), commonly referred to as numerosity, commonality, typicality and adequacy of representation.[4]  Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 613 (1997).  Parties moving for class certification bear the burden of establishing each element of Rule 23(a). London v. Wal-Mart Stores, 340 F.3d 1246, 1253 (11th Cir. 2003).  If the party seeking class certification fails to demonstrate any single requirement, then the case may not continue as a

---

[4]The Court also notes that "prior to the certification of a class, and technically speaking before undertaking any formal typicality or commonality review , the district court must determine that at least one named class representative has Article III standing . . .." Prado-Steiman v. Bush, 221 F.3d 1266, 1279 (11th Cir. 2000); see also, Tucker v. Phyfer, 819 F.2d 1030, 1033 (11th Cir. 1987) (concluding that where no exception applies, class action is moot if no named plaintiff's claim is live on date of certification); Griffin v. Dugger, 823 F.2d 1476, 1482 (11th Cir. 1987).  There does not appear to be, and the Court does not find, a dispute as to the named Plaintiffs' standing.

class action.  <u>Jones v. Roy</u>, 202 F.R.D. 658, 662 (M.D. Ala. 2001).  Specifically, the four

requirements of Rule 23(a) are:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or
>
> defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In deciding whether to certify a class, a district court has broad discretion.  <u>Washington v.

Brown & Williamson Tobacco Corp.</u>, 959 F.2d 1566, 1569 (11th Cir. 1992).  Although a district

court is not to determine the merits of a case at the certification stage, sometimes "it may be

necessary for the court to probe behind the pleadings before coming to rest on the certification

question."  <u>Id.</u> at 1570 n.11 (quoting <u>General Tel. Co. v. Falcon</u>, 457 U.S. 147, 160 (1982)).  A

class action may only be certified if the court is satisfied, after a rigorous analysis, that the

prerequisites of Rule 23 have been met.  <u>Gilchrist v. Bolger</u>, 733 F.2d 1551, 1555 (11th Cir.

1984).  For the reasons discussed below, the Court is not satisfied, after the rigorous analysis,

that the requirements for a class action have been met.

**1. Numerosity**

The first requirement of Rule 23(a) is that the class must be "so numerous that joinder of

all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  The focus of the numerosity inquiry is

not whether the number of proposed class members is "too few" to satisfy the Rule, but "whether

joinder of proposed class members is impractical."  <u>Armstead v. Pingree</u>, 629 F. Supp. 273, 279

(M.D. Fla. 1986).  Parties seeking class certification do not need to know the "precise number of class members," but they "must make reasonable estimates with support as to the size of the proposed class."  Fuller v. Becker & Poliakoff, P.A., 197 F.R.D. 697, 699 (M.D. Fla. 2000).  The Eleventh Circuit has held that "[g]enerally, less than twenty-one is inadequate, more than forty adequate."  Cheny v. Cyberguard Corp., 213 F.R.D. 484, 490 (S.D. Fla. 2003) (quoting Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir. 1986)).  Thus, the "sheer number of potential class members may warrant a conclusion that Rule 23(a)(1) is satisfied."  LaBauve v. Olin Corp., 231 F.R.D. 632, 665 (S.D. Ala. 2005) (citing Bacon v. Honda of Amer. Mfg., Inc., 370 F.3d 565, 570 (6th Cir. 2004)).  Plaintiffs' alleged class consists of all Florida residents who purchased impact resistant Pozzi or Caradco windows and/or glass doors.  Glasslam and Reichhold do not dispute that therefore, approximately 29,000 units of glass may be at issue.  Accordingly, the Court finds that numerosity is satisfied.

### 2. Commonality

Rule 23(a)'s commonality prerequisite requires at least one issue common to all members of the class.   However, it "does not require that all of the questions of law or fact raised by the case be common to all the plaintiffs."  Walco Invs., Inc. v. Thenen, 168 F.R.D. 315, 325 (S.D. Fla. 1996).  The commonality element is generally satisfied when a plaintiff alleges that "[d]efendants have engaged in a standardized course of conduct that affects all class members."  In re Terazosin Hydrochloride, 220 F.R.D. 672, 687 (S.D. Fla. 2004); Agan v. Katzman & Korr, P.A., 222 F.R.D. 692, 697 (S.D. Fla. 2004); In re Amerifirst Sec. Litig., 139 F.R.D. 423, 428 (S.D. Fla. 1991).  However, "a class action must involve issues that are susceptible to class-wide proof."  Cooper v. Southern Co., 390 F.3d 695, 713 (11th Cir. 2004) (quoting Murray v.

14

Auslander, 244 F3d 807, 811 (11th Cir. 2001)).

As Plaintiffs note, there are common questions of law and fact that have previously been established in prior litigations.  For example, Plaintiffs assert that it has previously been established that the Reichhold resin was defective.  However, as was also consistently held by this Court in those cases, individual factual issues as to the issues of causation remain as to each piece of glass.[5]  Though there may be common issues based on the allegations in the Complaint, such as whether Jeld-Wen knew or should have known of the defective resin, there are other issues that are not common to the class.  However, as the essential focus of this requirement is on whether there is at least a single core common issue and it is not a stringent requirement, the Court finds that Plaintiffs have satisfied this requirement.  See e.g., LaBauve, 231 F.R.D. at 667("commonality requirement is not a stringent threshold").  The actions surrounding the resin and the glass products provide the uniform course of conduct directed at all potential class members.

**3.  Typicality**

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Although similar to commonality in that it concentrates on the "nexus" between class members and the named class representative, typicality differs from commonality in that it focuses on the named class representative's individual characteristics in comparison to the proposed class.  Piazza v. Ebsco Indus. Co., 273

---

[5]As for individualized issues pertaining to Jeld-Wen's warranties, the Court need not address these issues.  As described in Section I(B)(4) *supra*, the Court held in Jeld-Wen II that Glasslam and Reichhold may not assert the warranties as a defense and thus, Jeld-Wen is judicially estopped from asserting the warranties against its customers.

F.3d 1341, 1346 (11th Cir. 2001); Prado-Steiman v. Bush,  221 F.3d 1266, 1269 (11th Cir.

2000).  The purpose of requiring typicality is to ensure the advancement of the class members'

interests through the advancement of the plaintiff's own interests.  In re Terazosin, 220 F.R.D. at

687.  Therefore, a class representative must possess the same interest and suffer the same injury

as the class members in order to be typical under Rule 23(a)(3).  Murray v. Auslander, 244 F.3d

807, 811 (11th Cir. 2001) (citing Prado-Steiman, 221 F.3d at 1279).  The named plaintiff's

claims, however, need not be identical to class members as long as the claims arise out of the

same conduct and are grounded on the same legal theory.  See Kornberg v. Carnival Cruise

Lines, Inc., 741 F.2d 1332, 1337 (11th Cir. 1984); see also CV Reit, Inc. v. Levy, 144 F.R.D.

690, 696 (S.D. Fla. 1992).  "The test for typicality, like commonality, is not demanding."  In re

Disposable Contact Lens Antitrust Litig., 170 F.R.D. 524, 532 (M.D. Fla. 1996).  To defeat

typicality, the factual variation of a class representative "must be clear and must be such that

interests of the class are placed in significant jeopardy."  Id. at 686.

   To the extent that Plaintiffs' claims are premised on the same conduct–such as whether

Jeld-Wen knew of the defect and whether it breached its warranties, the named Plaintiffs' claims

are typical of the proposed class.  The named plaintiffs claims are sufficiently typical of the

proposed class' claims and based on the same legal theories.  Thus, this prong is satisfied.

   **4. Adequacy**

   Rule 23(a)(4) requires a showing that the "representative parties will fairly and

adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  To adequately represent a

class, a named plaintiff must show that she possesses the integrity and personal characteristics

necessary to act in a fiduciary role representing the interests of the class, and has no interests

antagonistic to the interests of the class.  In re Ins. Mgmt. Solutions Group, Inc., 206 F.R.D. 514, 516 (M.D. Fla. 2002); see also Kirkpatrick v. J.C. Bradford & Co., 827 F.2d 718, 726 (11th Cir. 1987).  In addition, this may include an examination of the chosen class counsel, especially if there is a potential conflict of interest.  London, 340 F.3d at 1253 (discussing cases in which class certification properly denied in instances such as a named plaintiff's brother was class counsel and named plaintiff was employee of class counsel).

Plaintiffs put forth that they have no interests antagonistic to the class and that they and their chosen counsel will vigorously represent the class.  Reichhold points out that a lawyer in one of Plaintiffs' counsels' firms would be a potential class member, as he owns a home containing Jeld-Wen windows with Reichhold resin.  Plaintiffs aver that said counsel "and his wife will disavow their class membership and file a formal exclusion . . .."  Plaintiff's Reply, p. 9.  The Court does not find this issue fatal to the adequacy issue.  Though there was minimal showing by Plaintiffs until their Reply brief of their adequacy, the Court does not find this element dispositive in light of the further deficiencies with the proposed class action.  Other than the potential conflict of one of counsel's lawyers, Plaintiffs have demonstrated their adequacy sufficiently.

## C.  Rule 23(b)(3)

In addition to meeting the four requirements of Rule 23(a), parties seeking class certification must prove that the action is maintainable under one of the three subsections of Rule 23(b).  Amchem Prods., 521 U.S. at 614.  Even having satisfied the Rule 23(a) requirements, a "quest for class certification would nonetheless fail absent satisfaction of one prong of Rule 23(b)."  Labauve,  231 F.R.D. at 671.  Here, Plaintiff seeks certification pursuant to Rule

23(b)(3).  Rule 23(b)(3) requires that (1) "questions of law or fact common to class members predominate over any questions affecting only individuals members," and (2) "that a class action is superior to other available methods for fairly and efficiently adjudication the controversy." Fed. R. Civ. P. 23(b)(3).

### 1.  Predominance

"Under Rule 23(b)(3) it is not necessary that all questions of law or fact be common, but only that some questions are common and that they predominate over the individual questions." Klay v. Humana, Inc., 382 F.3d 1241, 1254 (11th Cir. 2004).  Though similar to the commonality issue, the predominance requirement is "far more demanding."  Cooper, 390 F.3d at 722; see also, Jackson v. Motel 6 Multipurpose, Inc., 130 F.3d 999, 1005 (11th Cir. 1997).  The court's inquiry is typically focused on "whether there are common liability issues which may be resolved efficiently on a class-wide basis."  Brown v. SCI Funeral Servs. of Fla., 212 F.R.D. 602, 606 (S.D. Fla. 2003).  Issues that are subject to generalized proof and applicable to the whole class must predominate over the issues involving individualized proof.  Kerr v. City of W. Palm Beach, 875 F.2d 1546, 1558 (11th Cir. 1989).  To conduct this inquiry, the Court must consider the cause of action and "what value the resolution of the class-wide issue will have in each member's underlying cause of action."  Rutstein v. Avis Rent-A-Car Sys., Inc., 211 F.3d 1228, 1234 (11th Cir. 2000).

The Court finds that Plaintiffs fail to satisfy this requirement.  As this Court has consistently held in prior litigations, causation in regards to each claimed product remains a key determinative factor as to the legal cause of damages.  For example, in Jeld-Wen I, the jury was instructed to determine whether the defective resin was a legal cause of the damages for each

pane of glass, on a house by house basis.  Case No. 05-60860 [DE-361; DE-362]; see also, Jeld-Wen II, Case No. 07-22326, Order on Summary Judgment Motions [DE-526 at 13] (S.D. Fla. June 5, 2008) ("the issue of causation–the damages proximately caused by the breach and the amount of those damages–remains"); Glasslam II, 05-60704, Order on Summary Judgment Motions [DE-108 at 14-15] (S.D. Fla. Oct. 30, 2006) ("[a]lthough the jury in Glasslam I found causation for all customers in that case, there are many variables that might lead another jury to a different outcome as to the windows at issue in this case.").  The need to determine the causation on an individualized basis precludes the ability to maintain the above-styled case as a class action.  Predominance is not present in this case, as the resolution of the common issues will "break . . . down into an unmanageable variety of individual legal and factual issues."  Cooper, 390 F.3d at 722 (quoting Andrews v. Amer. Tel. & Tel. Co., 95 F.3d 1014, 1023 (11th Cir. 1996)).  As the Eleventh Circuit has indicated, "[w]here, after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individualized claims, such claims are not suitable for class certification under Rule 23(b)(3)."  Klay, 382 F.3d at 1266. For these reasons, Plaintiffs fail to meet the predominance element and thus class certification is not warranted.

**2. Superiority**

Not only do Plaintiffs fail to meet the predominance requirement, they fail in demonstrating that a class action would be superior.  To determine if the superiority requirement of Rule 23(b)(3) is satisfied, the Court must consider the following:

(A) the interest of members of the class in individually controlling the prosecution or

defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C) the desirability or undesirability of concentrating the litigation of claims in the particular forum; and

(D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3); see also, De Leon-Granados v. Eller & Sons Trees, Inc., 497 F.3d 1214, 1220 (11th Cir. 2007).

The Court recognizes the desirability of concentrating homeowner claims in this particular forum, in which preliminary issues, such as the defectiveness of the resin have already been established as a matter of law.  However, the Court finds that Plaintiffs fail to satisfy this requirement.  Though Plaintiffs argue that the numerous requests for exclusions that have already been filed should not determine whether the class is appropriate, the Court does find the number of exclusions filed significant.  Notably, as of the date of this Order, 16 individual motions to be excluded from the proposed class, should it be certified, have been filed by parties with legal representation. [DE-19; DE-49; DE-78; DE-79; DE-85; DE-86; DE-100; DE-106; DE-121; DE-131; DE-141; DE-157; DE-162; DE-167; DE-172; DE-174].  This likely indicates that each homeowner would prefer to litigate the issues on their own.  As this Court has consistently ruled that causation remains an individualized issue, homeowners may prefer to control the prosecution as it regards their own glass windows and doors.  In fact, two separate actions by homeowners are currently before this Court.  See Case No. 08-80170-CIV-DIMITROULEAS, Hammond v. Jeld-Wen (S.D. Fla. filed Feb. 20, 2008); Case No. 08-20477-CIV-DIMITROULEAS, Palomares

v. Jeld-Wen, (S.D. Fla. filed Feb. 22, 2008).  In addition, the claims at issue here do not involve a *de minimis* sum so that an individual plaintiff would be discouraged from filing his own suit, as is demonstrated in fact by the individual actions already proceeding.  See Klay, 382 F.3d at 1270 ("class actions often involve 'an aggregation of small individual claims, where a large number of claims are required to make it economical to bring suit.'") (internal citations omitted). Furthermore, the difficulties in managing the class action are great, given the predominance of the individual issues discussed above.  See e.g., Metabolife, 218 F.R.D. at 273 ("Severe manageability problems are a prime consideration that can defeat a claim of superiority.").  For these reasons, the Court finds that a class action is not the superior method for addressing these claims.

### III.  CONCLUSION

Accordingly, for the aforementioned reasons, it is **ORDERED AND ADJUDGED** that Plaintiffs' Motion for Class Certification [DE-112] is hereby **DENIED**.

**DONE AND ORDERED** in Chambers, at Fort Lauderdale, Broward County, Florida this 12th day of June, 2008.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:

Counsel of Record

21