UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

CASE NO. 07-22328-CIV-DIMITROULEAS/ROSENBAUM

SUZANNE JONES, LES and LAUREN ROSEN and
DEAN and LISA SACERDOTE,

    Plaintiffs,

vs.

JELD-WEN, INC.,

    Defendant.
_____/

JELD-WEN, INC., individually and as assignee
of the claims of Cardinal IG Company,

Third-Party Plaintiff,

vs.

NEBULA GLASS INTERNATIONAL, INC.,
d/b/a GLASSLAM and N.G.I., INC., and
REICHHOLD, INC.

Third-Party Defendants
_____/

### ORDER GRANTING, IN PART, AND DENYING, IN PART, THIRD-PARTY DEFENDANT GLASSLAM'S MOTION TO DISMISS

THIS CAUSE is before the Court upon Third-Party Defendant Glasslam's Motion to Dismiss Jeld-Wen's Third-Party Complaint [DE-111]. The Court has carefully considered the Motion, Jeld-Wen's Response [DE-119], Glasslam's Reply [DE-135], and is otherwise fully advised in the premises.

# I. BACKGROUND

## A. Factual History

The instant action stems from a lengthy path of litigation revolving around glass products and resin.  The Court will provide the extensive history in order to provide proper context for its ruling on the Motion to Dismiss.

Plaintiffs are Florida residents who purchased "hurricane proof" impact-resistant windows and glass doors from Defendant Jeld-Wen.  Defendant Jeld-Wen Inc. ("Jeld-Wen") is an Oregon corporation that is in the business of manufacturing and selling glass products, including laminated glass.  From 1997 to 2003, Jeld-Wen's Pozzi and Caradco divisions manufactured wood windows and doors incorporating laminated, hurricane-resistant glass products, which were made using the "Safety-Plus" system developed and licensed by Third-Party Defendant Nebula Glass International, Inc. d/b/a Glasslam N.G.I., Inc. ("Glasslam").

Third-Party Defendant Glasslam is a Florida corporation that supplies licensee and non-licensee customers with raw materials and instructions to produce various laminated glass products.  Laminated glass is generally made by sandwiching resin and a thin film between two pieces of glass.  Glasslam licenses its patented process, called "Safety Plus I", for making impact-resistant laminated glass.

In 1996, Glasslam commenced a business relationship with Third-Party Defendant Reichhold, Inc. ("Reichhold").  Reichhold is a Delaware corporation, with manufacturing plants in Florida, that produces resin for various applications.  During the course of their relationship, Reichhold supplied Glasslam with drums of resin through a distributor, Polygard.  Glasslam used some of the resin but sold the remainder to its customers.  Reichhold supplied Glasslam with

three different resins in the following order (though sales of all three resins overlapped): (1) Resin 32038; (2) Resin 32029; and (3) Resin 32038-45.  Glasslam discovered in October 2001 that Reichhold had been making its resin without Tinuvin 328, an ultra-violet light absorber Glasslam had required.  The parties' business relationship terminated in approximately December 2001, and no other resin was sold by Reichhold to Glasslam after that time.  Glasslam continued to sell Reichhold resin to its customers through February 2002, though it added Tinuvin to all Reichhold resin sold to third parties.

One of the customers to whom Glasslam sold Reichhold resin was Defendant Jeld-Wen.  In June 1997, Glasslam and Jeld-Wen had entered into an agreement wherein Glasslam licensed its Safety-Plus system to Jeld-Wen and agreed to sell Safety-Plus products for the manufacturing of laminated impact-resistant glass at Jeld-Wen's Pozzi facility.  In August 1998, Cardinal IG Company ("Cardinal"), a Minnesota corporation, also entered into a contract with Glasslam for the licensing rights to make, use, and sell the resin and Safety-Plus products.  Jeld-Wen and Cardinal then purchased resins from Glasslam under the terms of their Agreements.  Jeld-Wen incorporated the resins in the manufacture of impact-resistant glass for use in hurricane-prone regions.  Cardinal manufactured, and sold to Jeld-Wen, Safety Plus glass containing the resin.  When prepared properly, the impact resistant glass was meant to perform for at least ten years.  However, Jeld-Wen began receiving complaints from customers as to failures in the laminated glass–the glass was delaminating and discoloring.  Glasslam has since admitted that the resin is defective, due to the absence of Tinuvin and because the resin was "undercooked."

**B. Procedural History**

   *1. Glasslam I*

On April 5, 2002, Glasslam filed a Complaint against Reichhold in the Circuit Court for the Seventeenth Judicial Circuit in and for Broward County, Florida, which Reichhold removed to federal court on May 22, 2002. Nebula Glass Int'l, Inc. v. Reichhold, Inc., 02-60703-CIV-DIMITROULEAS (S.D. Fla. filed May 22, 2002) (hereinafter "Glasslam I"). On May 23, 2002, Glasslam filed an Amended Complaint in Glasslam I asserting claims for: (I) Breach of Contract; (II) Breach of Express Warranty; (III) Breach of Implied Warranty; (IV) Breach of Implied Warranty of Fitness for a Particular Purpose; and (V) Fraud. Primarily, Glasslam's Amended Complaint alleged that Glasslam required Reichhold to insert an ultraviolet light blocker called "Tinuvin 328" in the resin supplied by Reichhold. Glasslam contended that the absence, or incorrect percentage, of Tinuvin causes various problems including the decreased efficiency of hurricane resistant laminated glass. Glasslam contended that as a proximate result of Reichhold not supplying resin in accordance with Glasslam's specifications, Glasslam suffered known damages to several projects, a loss of business, and potential exposure for faulty glass.

On December 3, 2002, this Court granted Reichhold's motion to dismiss Counts IV and V of the Amended Complaint in Glasslam I. The Court dismissed the fraud count based on Florida's economic loss rule and the implied warranty for a particular purpose count based on insufficient allegations of Glasslam's reliance on Reichhold's skill and judgment. See Glasslam I, 02-60703-CIV (S.D. Fla. Dec. 3, 2002) [DE-14]. A jury trial on Plaintiff's remaining claims for breach of contract, breach of express warranty, and breach of implied warranty was held before this Court in May 2004. The jury found in favor of Plaintiff on all three counts and

awarded damages for each of the three Reichhold resins at issue for out-of-pocket expenses, unpaid customers claims for future replacement of laminated glass, and lost profits. The Court entered final judgment for Plaintiff in the amount of $22,500,000.00. Reichhold appealed the final judgment on the issue of damages only. On June 30, 2006, the Eleventh Circuit Court of Appeals affirmed the judgment. See Nebula Glass Int'l Inc. v. Reichhold, Inc., 454 F.3d 1203 (11th Cir. 2006).

### 2. *Glasslam II*

Glasslam filed another Complaint against Reichhold on April 29, 2005, asserting claims for: (I) Breach of Contract; (II) Breach of Express Warranty; (III) Breach of Implied Warranty; (IV) Fraud; (V) Negligent Misrepresentation; and (VI) Fraud in the Inducement, alleging facts identical to those in Glasslam I. See Nebula Glass Int'l, Inc. v. Reichhold, Inc., Case No. 05-60704-CIV-DIMITROULEAS (S.D. Fla. filed Apr. 29, 2005) (hereinafter "Glasslam II"). In that case, Glasslam sought damages in addition to those awarded in Glasslam I for claims that were not yet ripe at the time that Glasslam I was filed. In Glasslam II, Glasslam argued that Reichhold was collaterally estopped from relitigating Counts I, II, and III based on the final judgment in Glasslam I. Reichhold argued that it was not estopped from litigating those counts based on changed factual circumstances. The Court agreed, in part, and held that the parties could not relitigate the breach elements of Glasslam's claims but could litigate causation and themes of bad installation and bad fabrication based on changed factual circumstances. See Glasslam II, Case No. 05-60704-CIV (S.D. Fla. Oct. 30, 2006) [DE-108]. Prior to trial in Glasslam II, the parties reached a settlement agreement in that action.

### 3. *Jeld-Wen I*

On May 26, 2005, Jeld-Wen filed a Complaint against Defendants Glasslam and Cardinal IG Company ("Cardinal"). Jeld-Wen filed its Third Amended Complaint on December 1, 2006. [DE-117], in which it asserted claims for: (I) Breach of Contract; (II) Breach of Express Warranty; (III) Breach of Implied Warranty of Merchantability; (IV) Breach of Implied Warranty of Fitness for a Particular Purpose; (V) Unjust Enrichment; (VI) Fraud; and (VII) Claim of Indemnity against Glasslam. See Jeld-Wen, Inc. v. Nebula Glass International, Inc., Case No. 05-60860-CIV-DIMITROULEAS (S.D. Fla. filed May 26, 2005) (hereinafter "Jeld-Wen I"). Jeld-Wen voluntarily dismissed Cardinal from the action on January 30, 2007. [DE-165].

On December 9, 2005, Glasslam filed a Third-Party Complaint in Jeld-Wen I against Third-Party Defendant Reichhold. In the Third-Party Complaint (Amended by Interlineation), Glasslam alleged claims for the following: (I) Breach of Contract; (II) Breach of Express Warranty; (III) Breach of Implied Warranty; (IV) Fraud; (V) Negligent Misrepresentation; (VI) Fraud in the Inducement; and (VII) Indemnity; and (VIII) Contribution[1]. In the Third-Party Complaint, Glasslam alleged facts almost identical to those alleged in Glasslam II.

In ruling on the parties' motions for partial summary judgment, this Court ruled that collateral estoppel precluded the re-litigation as to whether the resin was defective. Causation again remained an issue however, in terms of actual damages for the windows at issue. See Jeld-Wen I, Case No. 05-60860-CIV (S.D. Fla. May 15, 2007) [DE-305]. A trial was conducted in June 2007, however, this Court then granted Jeld-Wen's Motion for a New Trial pursuant to

---

[1] Glasslam's Third-Party Complaint contained two counts numbered "Count VI." The Court construed the duplicate Count VI, Glasslam's claim for Indemnity, to be Count VII of the Third-Party Complaint and Count VII, a claim for Contribution, to be Count VIII.

6

Federal Rule of Civil Procedure 60(b)(3). [DE-489; DE-508]. The case was consolidated with claims brought in the subsequent case, discussed below, but in June 2008, the parties reached a settlement and both cases have since been dismissed. [DE-529].

### 4. *Jeld-Wen II*

On September 5, 2007, Jeld-Wen brought an action seeking damages for the claims that were not adjudicated in Jeld-Wen I and for claims assigned by Cardinal.  See Jeld-Wen, Inc. v. Nebula Glass International, Inc., et al., Case No. 07-22326-CIV-DIMITROULEAS (S.D. Fla. filed Sept. 5, 2007) (hereinafter "Jeld-Wen II").  In its Second Amended Complaint filed on January 28, 2008 [DE-112], Jeld-Wen brought claims against Glasslam for (I) Breach of Contract; (II) Breach of Implied Warranty of Merchantability; (III) Breach of Implied Warranty of Fitness for a Particular Purpose; (IV) Unjust Enrichment; (VIII) Constructive Trust; (IX) Equitable Lien; (XIII) Implied Contractual Indemnity; and (XIV) Breach of Covenant of Good Faith and Fair Dealing.  Jeld-Wen also brought claims against Glasslam and Reichhold for (V) Innocent Misrepresentation; (VI) Negligent Misrepresentation and Non-Disclosure; (VII) Fraud; (X) Equitable Subrogation; (XI) Equitable Assignment; and (XII) Equitable Indemnity.  In addition, Jeld-Wen brought claims against Stephen Howes, the President and owner of Glasslam, for: (XV) Alter Ego/Piercing the Corporate Veil and (XVI) Unjust Enrichment, as well as (XX) Restitution of Royalties against Glasslam and Howes.  Finally, Jeld-Wen brought claims for (XVII) Declaratory Judgment as to the Invalidity of U.S. Patent No. 5,778,629; (XVIII) Declaratory Judgment as to the Invalidity of U.S. Patent No. 5,937,611; and (XIX) Declaratory

Judgment as to the Invalidity of U.S. Patent No. 6,101,783.[2]

Glasslam filed a cross-claim against Reichhold on March 7, 2008, bringing claims for breach of contract, breach of express warranty, breach of implied warranty, indemnification and contribution.

On May 1, 2008, this Court granted Reichhold's Motion to Dismiss in part. Case No. 07-22326-CIV (S.D. Fla. May 1, 2008) [DE-371]. Counts V (Innocent Misrepresentation); X (Equitable Subrogation); XI (Equitable Assignment); and XII (Equitable Indemnity) of Jeld-Wen's Second Amended Complaint were dismissed against Reichhold for failure to state a claim. Only Jeld-Wen's claims for negligent misrepresentation and fraud remained as to Defendant Reichhold. As noted above, the parties reached a settlement in this action and the consolidated Jeld-Wen I action and the cases were dismissed. [DE-554].

### 5. *Jones v. Jeld-Wen*

Plaintiffs, customers of Jeld-Wen, filed the instant action on August 14, 2007 in the Circuit Court of Miami-Dade County, which Defendant Jeld-Wen removed on September 5, 2007. [DE-1]. Plaintiffs filed an Amended Class Action Complaint ("Complaint") on January 8, 2008. [DE-83]. In the Complaint, Plaintiffs indicate their homes contain Jeld-Wen impact resistant windows and glass doors, manufactured with resin supplied by Glasslam and glass products supplied by Cardinal.[3] The named Plaintiffs are Suzanne Jones, a resident of Miami-

---

[2] Glasslam and Howes filed a Motion to Sever [DE-236], which was granted. Calendar Call for a trial on Counts XV-XX is scheduled for August 22, 2008. [DE-443].

[3] The Complaint had also named Cardinal and Glasslam as Defendants, but they were voluntarily dismissed on November 9, 2007. [DE-57; DE-58].

Dade County, and Dean and Lisa Sacerdote, residents of Martin County.[4]

According to the Complaint, Jeld-Wen knew or should have known that the windows and glass doors were not suitable for residential or commercial use and that the windows were subject to fail due to defective resin and/or a uniform design defect.  The Complaint further alleges that Jeld-Wen, upon learning of the defect, should have disclosed this to its customers and fully compensated them for all damages arising from the defect.  The Complaint further indicates that though Jeld-Wen has offered to provide new windows and doors to some customers, it is holding customers responsible for the installation costs.  For example, the Sacerdote's windows were replaced by Jeld-Wen, but they had to pay the labor and installation charges.  The Complaint brings claims for (I) Breach of Implied Warranty of Merchantability; (II) Breach of Implied Warrranty of Fitness for a Particular Purpose; (III) Violation of Florida Deceptive and Unfair Trade Practices Act; and (IV) Unjust Enrichment.  This Court has jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332.

On January 18, 2008, Jeld-Wen, on its own behalf and on behalf of the rights assigned by Cardinal, filed a Third-Party Complaint against Glasslam and Reichhold.  Jeld-Wen brings claims for (I) Breach of Contract against Glasslam; (II) Breach of Implied Warranty of Merchantability against Glasslam; (III) Breach of Implied Warranty of Fitness for a Particular Purpose against Glasslam; (IV) Indemnity against Glasslam and (V) against Reichhold; (VI) Contribution against Glasslam and (VII) against Reichhold; (VIII) Equitable Indemnity against Glasslam and (IX) against Reichhold; and (X) Implied Contractual Indemnity against Glasslam.

---

[4] Les and Lauren Rosen filed a Notice of Voluntary Dismissal, dismissing their claims against Jeld-Wen on June 26, 2008. [DE-184].  Their claims were dismissed on June 27, 2008. [DE-186].

## II. DISCUSSION

Glasslam brings the instant Motion, seeking to dismiss all of Jeld-Wen's claims for Breach of Contract, Breach of Warranties, Equitable Indemnity, Contribution, and Implied Contractual Indemnity. Glasslam argues that the claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), as they fail to state claims.

### A. Motion to Dismiss Standard

To adequately plead a claim for relief, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957). Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss should be granted only if the plaintiff is unable to articulate enough facts "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007) (abrogating Conley v. Gibson, 355 U.S. 41 (1957)). The allegations of the claim must be taken as true and must be read to include any theory on which the plaintiff may recover. See Linder v. Portocarrero, 963 F.2d 332, 334-36 (11th Cir. 1992) (citing Robertson v. Johnston, 376 F.2d 43 (5th Cir. 1967)). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint, and "a district court weighing a motion to dismiss asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" Twombly, 127 S. Ct. at 1969 n.8 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

### B. Glasslam's Motion to Dismiss

As an initial matter, Glasslam argues that Jeld-Wen can only properly bring a claim for indemnity as its other counts overlap claims in Jeld-Wen II. However, at the time of these arguments, Jeld-Wen II was still pending and Glasslam's arguments centered on the fact that when two action involving overlapping issues and parties are pending in two federal courts, the first-filed suit is operative. See e.g., Manuel v. Convergys Corp., 430 F.3d 1132, 1135 (11th Cir. 2005). However, Jeld-Wen II has since settled, thus, the Court does not find this point dispositive. Therefore, as Glasslam asserts no other grounds for dismissal of the breach of contract or breach of warranty claims, the Motion fails as to those counts.[5]

#### 1. Breach of Contract

Under Florida law, to prove a claim for breach of contract, a plaintiff must show: (1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach. Rollins, Inc. v. Butland, 951 So. 2d 860, 876 (Fla. 2d DCA 2006) (citing Knowles v. C.I.T. Corp., 346 So. 2d 1042, 1043 (Fla. 1st DCA 1977)). Jeld-Wen sufficiently pleads a cause of action for a breach of contract.

#### 2. Breach of Implied Warranty of Merchantability

Under Florida law, to establish a claim for breach under a theory of implied warranty, a plaintiff must show (1) that the Plaintiff was a foreseeable user of the product, (2) that the product was being used in the intended manner at the time of the injury; (3) that the product was

---

[5]To the extent Glasslam chooses to pursue arguments premised on *res judicata* and collateral estoppel, those may be properly raised at a later stage.

defective when transferred from the warrantor; and (4) that the defect caused the injury. Amoroso v. Samuel Friedland Family Enter., 604 So. 2d 827, 833 (Fla. 4th DCA 1992). Jeld-Wen also sufficiently pleads a cause of action for this count.

### 3. Breach of Warranty of Fitness for a Particular Purpose

Jeld-Wen also sufficiently pleads a cause of action for breach of warranty of fitness for a particular purpose. Under Florida law, a warranty of fitness for a particular purpose arises "where a seller has reason to know a particular purpose for which the goods are required and the buyer relies on the seller's skill or judgment to select or furnish suitable goods." Royal Typewriter Co., a Div. of Litton Bus. Sys., Inc. v. Xerographic Supplies Corp., 719 F.2d 1092, 1100 (11th Cir. 1983) (citing Fla. Stat. Ann. § 672.315).[6] "A 'particular purpose' differs from an ordinary purpose in that it envisages a specific use by the buyer which is peculiar to the nature of his business." Id. (citing Official Comment 2 to U.C.C. § 2-315). Jeld-Wen has sufficiently pled facts for this cause of action.

### 4. Indemnity

To succeed on a claim for indemnity, it must be demonstrated that 1) the party seeking the indemnity is without fault and 2) the indemnity is only from the party at fault. Dade County Sch. Bd. v. Radio Station WQBA, 731 So. 2d 638, 642 (Fla. 1999). In addition, Florida law imposes an additional requirement–that there be a special relationship between the parties. Id.

---

[6] Florida Statute § 672.315 states that "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose."

First, the Court notes that Jeld-Wen has brought a claim for Indemnity (Count IV) and Equitable Indemnity (VIII).  Glasslam argues that the Equitable Indemnity count would appear to either be the same as the claim for indemnity or for contribution.  The Court notes that common law indemnity is an equitable remedy arising from obligations imposed through special relationships, see Rosenberg v. Cape Coral Plumbing, Inc., 920 So. 2d 61, 65 (Fla. 2d DCA 2005) (citing Camp, Dresser & McKee, Inc. v. Paul N. Howard Co., 853 So. 2d 1072, 1077 (Fla. 5th DCA 2003)), thus the claim for equitable indemnity is redundant and will therefore be dismissed.  See e.g., Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir. 1999), overruled on other grounds, Manders v. Lee, 338 F.3d 1304, 1328 n. 52 (11th Cir. 2003), (indicating that a claim should have been dismissed by district court, "irrespective of its merits," because it was redundant).

As for the indemnity claim, Glasslam argues that Jeld-Wen has not alleged that it is without fault and thus, its indemnity claim cannot stand.  Jeld-Wen counters that it has pled that it is not at fault for the harm suffered by the Plaintiffs.  The Court finds that Jeld-Wen has sufficiently pled a cause of action for indemnity and issues of fault turn on factual matters not appropriate for disposition at this time.

**5. Contribution**

In Count VI, Jeld-Wen brings a claim of contribution against Glasslam.  Glasslam argues that this count should be dismissed for failure to state a claim.  Glasslam asserts that contribution only arises among joint tortfeasors and cannot be asserted in a contract-based action.  As the Plaintiffs' Complaint is premised on contract-related actions, contribution is not appropriate.

Furthermore, Plaintiffs' claim for violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) is a statutory cause of action and not a traditional tort.  Glasslam also argues that even if the FDUTPA claim is treated as a tort, Jeld-Wen has not alleged that Glasslam was in any way a joint participant in Jeld-Wen's violation of this statute.

In Response, Jeld-Wen argues that FDUTPA sounds in tort, and if it is found liable to the Plaintiffs, Glasslam shares in that liability.  However, Jeld-Wen fails to point to any law establishing that contribution would be appropriate in these circumstances.

Contribution is available "when two or more persons become jointly or severally liable in *tort* for the same injury to person or property, or for the same wrongful death . . .."  Fla. Stat. § 768.31. (emphasis added).  It is not available for a contract-based action.  Iowa Mut. Ins. Co. v. Lopez, 444 So. 2d 1021, 1021 (Fla. 3d DCA 1984).  Given that the allegations in the Plaintiffs' Complaint and Jeld-Wen's Third-Party Complaint are premised on contracts involving the resin and the glass products amongst the relative parties, the Court finds Jeld-Wen fails to state a claim for contribution.  As for the FDUTPA claim, this is a statutory cause of action and thus, the Court finds no authority to extend a right to contribution to such a claim.  Furthermore, the Court finds that the claim for indemnity is sufficiently similar, thus obviating the need for this count.  Therefore, Jeld-Wen's claim for contribution against Glasslam fails to state a claim.

**6. Implied Contractual Indemnity**

Count X of Jeld-Wen's Third-Party Complaint brings a claim of implied contractual indemnity against Glasslam.  Implied contractual indemnity arises where there are "unique special factors demonstrating that the parties intended that the would-be indemnitor bear the

ultimate responsibility for the plaintiff's safety, or where there is a generally recognized special relationship between the parties." Maritime Overseas Corp. v. Northeast Petroleum Indus., Inc., 706 F.2d 349, 353 (1st Cir. 1983) (citing TransDulles Center Inc. v. USX Corp., 976 F.2d 219, 228 (4th Cir. 1992)). The party alleging the claim has a heavy burden of showing an implied agreement by the potential indemnitor to indemnify it. Triguero v. Conrail, 932 F.2d 95, 101 (2d Cir. 1991).

Jeld-Wen has not alleged facts demonstrating that there was an implied agreement by Glasslam to indemnify it. Jeld-Wen argues that the special relationship that existed between itself and Glasslam by virtue of their contract to purchase resin is a sufficient ground to expect Glasslam to indemnify it in the present litigation, which arises from those purchases. However, this count would seem to meld the indemnity and implied contractual theories.[7] In any event, the indemnity claim already addresses the potential indemnity arising between the parties and in light of the failure to allege facts arising to an implied duty in the contract, this claim also is to be

---

[7] See e.g., Philip L. Bruner & Patrick J. O'Connor, Jr., Bruner & O'Connor on Construction Law § 10:110:

> Implied indemnity comes in two forms: (1) implied-in-fact, and (2) implied-in-law. Implied-in-fact indemnity, sometimes referred to as implied contractual indemnity, is grounded in contract theory. On the other hand, implied-in-law indemnity, sometimes referred to as equitable indemnity, is ground in equity. While both indemnity rights are implied, the focus of inquiry is quite different. Under implied contractual indemnity, the focus is upon the intent of the parties. With equitable indemnity, the focus is on the nature of the relationship between the indemnitor and indemnitee, i.e., the relative degrees of culpability or the derivative/vicarious aspects of the relationship. The existence of a particular "relationship" between indemnitee and indemnitor is also a significant factor in determining whether implied contractual indemnity exists. The role the relationship plays has generated some confusion in this area, which can be avoided by keeping in mind that implied-in-fact indemnity always depends upon the parties' intentions. . . . In sum, while both implied contractual indemnity and equitable indemnity arise from the relationship existing between indemnitor and indemnitee, the focus of the former is the parties' intentions, whereas the latter is the role played by each party in the injury that gives rise to the claim of indemnity.

dismissed.

### III.  CONCLUSION

Accordingly, for the aforementioned reasons, it is **ORDERED AND ADJUDGED** as follows:

1)  Third-Party Defendant Glasslam's Motion to Dismiss Jeld-Wen's Third-Party Complaint [DE-110] is **GRANTED IN PART**.

2)  Plaintiff's Third-Party Complaint is hereby **DISMISSED** as to Counts VI (Contribution), VIII (Equitable Indemnity), and X (Implied Contractual Indemnity).

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida this 30th day of June, 2008.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:
Counsel of Record